UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                 P-SEND
CIVIL MINUTES - GENERAL

CASE NO: CV 02-00301-RGK (CTx)                 DATE: May 02, 2003

TITLE: *WALL DATA INCORPORATED v. LOS ANGELES COUNTY SHERIFFS', et al.*

PRESENT:   THE HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE

Sharon L. Williams                             Not Reported
Courtroom Clerk                                Court Reporter

ATTORNEY FOR PLAINTIFF:                        ATTORNEY FOR DEFENDANT:

Not Present                                    Not Present

PROCEEDINGS:   (IN CHAMBERS) ORDER RE: (1) DEFENDANT LASD'S MOTION
               FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE,
               SUMMARY ADJUDICATION; AND (2) PLAINTIFF WALL
               DATA'S MOTION FOR SUMMARY JUDGMENT, OR IN THE
               ALTERNATIVE, SUMMARY ADJUDICATION

I.   **FACTUAL BACKGROUND**

This action is brought by Plaintiff Wall Data Incorporated ("Plaintiff" or "Wall Data") against Defendants Los Angeles County Sheriff's Department ("LASD") and Los Angeles County ("LA County")[1] (collectively "Defendants") for:

(1)   Copyright Infringement; and
(2)   Breach of Contract.

A.   **Uncontroverted Facts**

Plaintiff is a Washington corporation with its headquarters in Kirkland, Washington. It is a wholly owned subsidiary of NetManage, Inc. Defendants state that Defendant LA County is a governmental entity of the State of California, and that LASD is a division of the LA County

---

[1] Defendant LASD's Answer to the First Amended Complaint ("FAC") states that LASD is a division of LA County, and therefore LASD and LA County are erroneously sued as separate defendants. (Defendant's Answer to FAC at 1:20-22). However, Plaintiff argues that LASD and LA County are correctly sued as distinct defendants.

1

government. However, Plaintiffs dispute this, stating that LA County and LASD are separate public entities sued separately, neither of which is an arm of the State of California.

Plaintiff owns the copyright in and markets a line of computer terminal emulation software products known as Rumba. Among the RUMBA products is "RUMBA 95/NT for the Mainframe" ("RUMBA Mainframe") designated for the purpose of allowing personal computers with the Microsoft Windows NT operating system to emulate the interface of an IBM Mainframe in order to enable them to access data stored therein.

RUMBA Mainframe is a grouping of terminal emulation software programs coupled together as a single product. RUMBA Mainframe is a constituent element of RUMBA Office. On December 30, 1996, LASD maintains that it bought 2,000 copies of RUMBA Office from its LA County approved vendor at a special price of $85.00 per copy. However, Plaintiff states that LASD did not buy copies, but placed and order for 2,000 licences of RUMBA Office.

In January of 1997, LASD began installing RUMBA manually onto approximately 700-750 computes due to be deployed in Twin Towers Correctional Facility ("Twin Towers"). Defendants state that it was quickly determined that the process of loading RUMBA manually was so time consuming that it would delay the opening of the Twin Towers. Plaintiff states that the delay was also due to the fact that Defendants were installing several software applications, not just RUMBA Office. Plaintiff maintains that to streamline the process of loading software, LASD included RUMBA in a "baseline" set of software and thereupon loaded the baseline by graphic imaging onto the Twin Towers computers. Although Defendants state that Plaintiff knew or should have known that LASD was imaging RUMBA software into more computers than the number for which it purchased licenses, Plaintiffs dispute this.

In 1998 and 1999, LASD purchased additional RUMBA licenses from its approved vendor as follows: In 1998, LASD acquired an additional 35 RUMBA licences. In January of 1999, it purchased 628 RUMBA Licences. In February 1999, it purchased 1,000 RUMBA licenses.

The total number of computers with an installed copy of RUMBA exceeded the number of licenses by a significant margin. However, the total number of computers who could use RUMBA to access to a host computer never exceeded the total number of licenses held.

A "click-through" license form was embedded in the RUMBA software shipped to LASD in connection with the 1996 license purchase, and subsequent purchases. This form required the person who initially loaded the software onto the LASD system to click a box indicating acceptance of its terms. There was no discussion regarding any of LASD's purchases as to the meaning of the term "activated" in the click through form. Plaintiff was the sole draftsman of the language of the click-through and alleged paper license forms.

2

## II. DISCUSSION

### A. Standard for Motion for Summary Judgment

Under the Federal Rules of Civil Procedure 56(c), summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of demonstrating the absence of a genuine issue of fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. See id.; Fed. R. Civ. P. 56(e).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. See Anderson, 477 U.S. at 250-51. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. See Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). The non-moving party cannot simply disagree or rest upon the mere allegations or denials in his or her pleadings; rather, the non-moving party must provide admissible evidence that genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995); See Harper v. Wallingform, 877 F.2d 728 (9th Cir. 1989); California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988).

If the moving party seeks summary judgment on a claim or defense on which it bears the burden of proof at trial, it must satisfy its burden by showing affirmative, admissible evidence. Unauthenticated documents cannot be considered on a motion for summary judgment. See Hal Roach Studios v. Richard Feiner and Co., 896 F.2d 1542, 1550 (9th Cir. 1987); Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir.1987). A document is authenticated when it is has the proper foundation. Canada, 831 F.2d at 925; Hamilton v. Keystone Tankship Corp., 539 F.2d 684, 686 (9th Cir.1976); United States v. Dibble, 429 F.2d 598, 601-02 (9th Cir.1970).

On a motion for summary judgment, admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. See Fed. R. Civ. P. 56(e). Declarations on "information and belief" are inappropriate to demonstrate a genuine issue of fact. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

## III. ANALYSIS[2]

Before this Court are two motions for summary judgment: (1) Defendant LASD's Motion for Summary Judgment, Or In The Alternative, Summary Adjudication; and (2) Plaintiff Wall Data's Motion for Summary Judgment, Or In The Alternative, Summary Adjudication. This Court first looks to whether Defendant LASD is entitled to summary judgment.

### A. Defendant LASD's Motion For Summary Judgment Is Denied In Its Entirety

#### 1. Summary Judgment Is Not Warranted In Relation To Plaintiff's Claim Of Copyright Infringement

LASD contends that it is entitled to summary judgment with respect to Plaintiff's first claim for copyright infringement. However, this Court disagrees.

Section 106 of the Copyright Act expressly grants to a copyright owner several exclusive rights, including the exclusive right of copying found in § 106(1). 17 U.S.C. § 106. To establish a successful claim for copyright infringement, the plaintiff must prove (1) ownership of the copyright and (2) unauthorized copying of the copyrighted work by the defendant. Baxter v. MCA, Inc., 812 F.2d 421, 423 (9th Cir. 1987); Sid & Marty Krofft Television Prods., Inc. v. McDolanld's Corp., 562 F.2d 1157, 1162 (9th Cir. 1977).

It is undisputed that Defendants copied Defendants copyrighted work. However, the issue remains as to whether the copying was unauthorized. If the copying was unauthorized, and Defendants have no affirmative defense, Defendants are liable for copyright infringement. The following discussion covers these issues.

#### 2. There Is No Evidence That The RUMBA Software Licenses In Issue Are Unenforceable Due To Lack Of Assent To Their Terms

LASD maintains that after it paid its vendor for the RUMBA software, the vendor delivered a small number of RUMBA CD's to LASD. The CD's had a "click-through license" embedded on them, which permitted installation of the software only if the end-user accepted the terms of the license by clicking the "I Accept" button during the installation process. LASD states that the later software deliveries were accompanied by standard form RUMBA paper license certificates ("shrink-wrap licenses").

LASD argues that the click-through and shrink-wrap licenses are unenforceable due to LASD's lack of assent to the terms of the licenses. LASD further contends that "there is no evidence that any relevant person at LASD read or agreed to this form, or any of the click-through

---

[2] Whereas this Court has relied on any evidence objected to by either party, such objections are overruled.

4

or shrink-wrap forms, or that . . . [Plaintiff] drew LASD's attention to them during or around the time of the purchases. (Declaration of Raphael Perera, ¶ 8; Salveson Decl., ¶¶ 22-23).

To support its contention that lack of assent equates to unenforceability of a click-through or shrink-wrap license, LASD cites SoftMan Products Co. v. Adobe Sys. Inc., 171 F. Supp. 2d 1075 (C.D. Cal. 2001). However, LASD's reliance on SoftMan is misguided. In SoftMan, the Court determined that the defendant did not assent to the terms of the license because the defendant was found not to have loaded the software onto its computers. Here, there is no question that LASD loaded the software onto its computers. This factual distinction is fatal to LASD's argument. As such, that Court cannot conclude that LASD's the licenses are unenforceable pursuant to LASD arguments and supporting evidence.

### 3. A Genuine Issue Of Fact Exists As To The Interpretation Of The License Agreement

LASD argues that its copying fell within the scope of the License Agreement. Specifically, LASD contends that LASD's copying of the RUMBA Office Software was permitted under the express terms of ¶ 1 of the License Agreement because the agreement granted LASD the right to copy the software on as many workstations as it saw fit so long as only 2,000 workstations used or were able to use the software to access a host.

In opposition, Plaintiff argues that Defendants far exceeded the rights conferred in the Licensing Agreement. To support its contention, Plaintiff quotes language from the Licence Agreement which states that LASD was granted the limited right to use the software licensed "on a Single Designated Computer for which the software has been activated . . . ." However, the definition of the term "activated" is in issue. Plaintiff states that activated means "copied onto a computer." However, LASD states that the term activated means "to make active," and therefore argues that the mere making of a copy of RUMBA on a computer's hard drive does not constitute "activation."

Under California law, agreements are to be interpreted according to their express terms. United States v. Nunez, 223 F.3d 956, 958 (9th Cir. 2000). And a licence is construed in accordance with the purposes underlying copyright law. S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1088 (9th Cir. 1989). From the express terms of the Licensing Agreement, this Court cannot determine, as a matter of law, the definition of the term "activated." Moreover, this Court cannot determine the definition of the term "activated" from and parties' arguments and supporting evidence. As such, a genuine issue of material fact exists for the jury.

LASD also argues that it did not breach the Licensing Agreement because it created only "one copy of the software solely for backup or archival purposes" as permitted by the Licensing Agreement. (LASD's Motion for Summary Judgment ("LASD's Motion"), Ex. 6, ¶ 2). LASD contends that "copy" is defined as a copy of each software licence. In opposition, Plaintiff argues that a "copy" means a copy of the software on Compact Disk ("CD"). Plaintiff supplied LASD with eight (8) CDs with the RUMBA software. Therefore, Plaintiff maintains that LASD was

permitted only eight (8) copies for backup or archival purposes. Again, because the parties' arguments are supported by conflicting evidence, a genuine issue of material fact exists.

In light of the foregoing, this Court need not address LASD other contentions in relation to whether it exceeded the number of licences granted under the Licensing Agreement or whether LASD was bound by the Licensing Agreement. Because genuine issues of material fact exist, summary judgment is not warranted.

> 4. **LASD Is Not Entitled To Summary Judgement In Relation To Its Affirmative Defense That Making Of Inactive Copies Is Permissible Under 17 U.S.C. § 117(a) As An Essential Step In Using The Software For Its Intended Purpose**

Title 17 U.S.C. § 117(a) permits "the owner of a copy of a computer program" to make another copy or adaptation of the program "as an essential step in the utilization of the computer program in conjunction with a machine and that it is used for no other purpose."

LASD argues that it is protected from copyright infringement under this statute because it is an owner of RUMBA copies, regardless of any gratuitous licence forms included with the CDs. LASD further argues that it owns the RUMBA copies because LASD paid a lump sum for its purchases and is allowed to use the software in perpetuity.

However, LASD mistakenly relies on SoftMan Prods. Co. v. Adobe Sys. Inc., 171 F. Supp.2d 1075 (C.D. Cal. 2001), for this proposition. This is because SoftMan does not discuss § 117.

At the outset, this Court notes that the express terms of § 117(a)(1) apply only to an "owner of a copy." The Ninth Circuit has held that licensees do not qualify as "owner" of software and are therefore "not eligible for protection under § 117." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518, n.5 (9th Cir. 1993). Since LASD has not met its burden of proving, as a matter of law, that it is an owner of a copy, LASD cannot rely on 117(a)(1) for protection. As such, summary judgment is favor of LASD is not warranted.

> 5. **LASD Is Not Entitled To Summary Judgment In Relation To Its Affirmative Defense of Fair Use**

LASD contends that any alleged copying by it of the RUMBA software falls within the fair use exception of the copyright laws. However, this Court disagrees.

"Fair use is an equitable rule of reason, requiring careful balancing of multiple factors in light of the purposes of copyright." Dr. Seuss Enterprises, L.P. v. Penguin Books, 109 F.3d 1394, 1399 (9th Cir. 1997) (internal quotations and citations omitted). Congress laid down four factors to be considered and weighed by the courts in determining if a fair use defense exists in a given case: (1) the purpose and character of the accused use; (2) the nature of the copyrighted work; (3)

6

the importance of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the accused use on the potential market for or value of the copyrighted work. Id. (citing 17 U.S.C. § 107).

### a. Purpose and Character of the Accused Use

The first factor looks at whether the use is of a commercial nature or for a nonprofit educational purpose. LASD does not adequately address this factor but instead baldly asserts that the use of RUMBA software "was for a decidedly non-commercial purpose" because it relates "to law enforcement[,] especially operating jails." LASD cites no case law to support its position that the LASD's use of the RUMBA software was for a non-profit education purpose. Because LASD fails to show that the purpose of the use was noncommercial, this factor weighs against a finding of fair use.

### b. Nature of the Copyrighted Work

This factor recognizes that creative and artistic works are "closer to the core of intended copyright protection" than informational and functional works, "with the consequence that fair use is more difficult to establish when the former works are copied." Micro Star v. Formgen Inc., 154 F.3d 1107, 1113 (9th Cir. 1998) (citations omitted).

LASD argues that the RUMBA software is an informational work, "a tool . . . that has no artistic or other intrinsic value aside from its function in enabling computers to access data."[3] Plaintiff does not dispute this. Rather, Plaintiff argues that its RUMBA computer program is a protected expressions which was crafted from substantial investment of time and labor." Plaintiff further argues that the RUMBA software consists of original computer programming and not a compilation of existing facts.

Due to the lack of designated evidence to support either parties' arguments, this Court finds this prong of the test neutral. As such, this factor does not weigh heavily in either parties' favor.

---

[3] For support, LASD cites cases that are factually distinguishable to this case and unpersuasive. In particular, LASD attempts to show that the factual situation in Kelly v. Arriba Soft Corp., 280 F.3d 934 (9th Cir. 2002) is analogous to the situation before the Court. However, it is not. In Kelly, the Ninth Circuit affirmed the district court's decision to grant summary judgment based on the fair use doctrine. The district court determined that defendant's use in its search engine of thumbnail images of a photographer's copyrighted works was fair use and therefore found no copyright infringement. In the present case, however, LASD is not accused of the same gathering of images using a search engine on the Internet. Rather, LASD is accused of creating unauthorized copies of a software program.

### c.    Amount and Substantiality of the Copyrighted Work Used

This factor considers the amount and substantiality of the portion used in relation to the copyrighted work as a whole. LASD contends that "the amount and substantiality of the portion used is nil [because] LASD is accused of making unauthorized <u>dormant</u> copies." (LASD's Motion for Summary Judgment ("LASD's Motion") at 14:25-26) (emphasis in original). Therefore, LASD argues that there technically was "no 'use' at all in the copyright sense . . . ." However, it is evident that LASD copied the entire RUMBA program. The Ninth Circuit has held that the copying of an entire work militate against a finding of fair use. A&M Records v. Napster, Inc., 239 F.3d 1004, 1016 (9th Cir. 2001). As such, this factor weighs against a finding of fair use.

### d.    Effect on the Market

Under this factor, where the copying is for commercial purposes and the copies are merely a duplication of the work, the likelihood of the market harm may be presumed. Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 451 (1984). In the present case, LASD does not sufficiently demonstrate that its use of RUMBA was noncommercial. Moreover, LASD fails to provide evidence that the copies loaded onto its various computers are not a mere duplication of Plaintiff's copyrighted work. As such, LASD's bald assertion that there was no effect on the market because LASD made "dormant copies" is insufficient to support a finding of no effect on the market.

Accordingly, in light of the above, this Court concludes that the factors analyzed weigh in favor of the conclusion that LASD is not entitled to summary judgment in relation to its fair use defense.

### 6.    A Genuine Issue Of Material Fact Exists As To Whether An Implied-In-Fact Contract Exists

LASD argues that summary judgement in relation to Plaintiff's second cause of action for breach of an implied-in-fact contract is warranted. However, this Court disagrees for the reasons discussed below.

An implied-in-fact contract exists where "the existence and terms . . . are manifested by conduct." Cal. Civ. Code § 1621; see U.S. Ex Rel Oliver v. Parsons Co., 195 F.3d 457, 462 (9th Cir. 1999). The conduct must demonstrate an intent to promise for an implied-in-fact contract to arise. Mulder v. Mendo Wood Prods., 225 Cal. App. 2d 619, 632 (1964). An implied contract consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words. Varni Bros. Corp. v. Wine World, Inc., 35 Cal. App. 4th 880, 888 (1995).

LASD disputes the existence of an implied-in-fact contract requiring LASD to pay for additional RUMBA licensing fees. For support, LASD states that Plaintiff knew that LASD was baselining RUMBA back in early 1997. LASD maintains that it was known that its RUMBA


purchases excluded consideration of useless dormant copies as actual licenses. However, because LASD provides insufficient evidence to support its contention, this Court cannot grant summary judgment in LASD's favor.

LASD also argues that it never had the authority to contract with Plaintiff. According to LASD, this is because "[t]he County procurement policy allowed LASD to purchase R[UMBA] from an approved vendor. . . . Therefore, there could be no implied contract with Plaintiff" because Plaintiff is not the approved vendor. However, LASD's argument makes little sense. Indeed, LASD merely states that it was allowed to purchase RUMBA from an approved vendor. No where does LASD claim that it could only purchase RUMBA software from a particular vendor. Therefore, LASD's argument is unavailing.

Accordingly, this Court **DENIES** Defendant Los Angeles Sheriff's Department's Motion for Summary Judgment or, Alternatively, for Summary Adjudication.

### IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IS GRANTED IN PART AND DENIED IN PART

#### A. Although Plaintiff Is Entitled To Summary Judgment As To Defendants' Fourth Affirmative Defense (15 U.S.C. § 117(a)(2)) And Eighth Affirmative Defense (Unenforceability Of Shrink Wrap And Click Though Forms), Plaintiff Is Not Entitled To Summary Judgment As To Defendants' Tenth Affirmative Defense (Estoppel, Waiver, and Modification) and Eleventh Affirmative Defense (Estoppel and Waiver By Acquiescence)

Plaintiff seeks summary judgment as to Defendants' Fourth, Eighth, Tenth, and Eleventh defenses.[4] Although Plaintiff is entitled to summary judgment as to Defendants' Fourth Affirmative Defense in relation to 15 U.S.C. § 117(a)(2) and Eighth Affirmative Defense,[5] Summary Judgment is not appropriate in relation to Defendants' Tenth and Eleventh Defenses.

---

[4] Plaintiff also seeks to have this Court grant summary judgment, sua sponte in favor of Plaintiff on Defendants' Fourth, Fifth, and Sixth Affirmative Defenses. However, Plaintiff provides no legal authority that would permit this Court to grant such relief. As such, this Court refuses to grant summary judgment, sua sponte, as to those affirmative defenses.

[5] LASD filed a Notice of Non-Opposition stating that it has chosen not to pursue their Fourth Affirmative Defense in relation to 15 U.S.C. § 117(a)(2), and their Eighth Affirmative Defense. As such, this Court does not touch upon these defenses and properly disposes of them by way of summary judgment.

### 1. Plaintiff Is Not Entitled To Summary Judgment In Relation To Defendants Tenth Affirmative Defense Of Estoppel[6]

Plaintiff argues that equitable estoppel cannot bar Plaintiff from asserting its copyright infringement claims against Defendants. However, this Court disagrees.

It is well settled that a defense of equitable estoppel requires that: (1) the party to be estopped must know of the facts; (2) it must intend that its conduct to be acted on, or must so act in a manner that the party asserting estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely on the conduct to its injury. Granite State Ins. v. Smart Modular Tech., 76 F.3d. 1023, 1027 (9th Cir. 1996); Johnson v. Williford, 682 F.2d 868, 872 (9th Cir. 1982). Because Plaintiff is requesting summary judgment on this issue, it must only prove that no reasonable juror could find that Defendants could demonstrate any one of the previous four elements.

In the present case, Plaintiff argues that Defendants cannot satisfy any of the factors listed above. As for the first factor, Plaintiff contends that Defendants cannot prove that Plaintiff knew of the facts giving rise to estoppel. For support, Plaintiff offers Defendants answer to Interrogatory No. 42, which states in relevant part that:

> Plaintiff seems never to have asked for or been informed of a count of installations of Office other than in discovery in this lawsuit, and LASD is not alleging that Wall knew or didn't know what the specific count was at any given time, [Plaintiff's] knowledge of the count being immaterial to any issue in this case.

(Plaintiff's Exhibits In Opposition To LASD's Motion for Summary Judgment and Summary Adjudication, Exh. 168). However, this Court finds that Defendants' answer to Interrogatory No. 42 insufficient to prove that Defendants conceded to Plaintiff's lack of knowledge. If anything, LASD admits that Plaintiff did not know of the exact number of RUMBA copies that LASD made, whether lawful or allegedly unlawful. Therefore, Plaintiff's evidence does not provide the requisite support for a finding of summary judgment.

---

[6] Plaintiff argues that LASD's Tenth Affirmative Defense, which encompasses waiver, estoppel and modification, has no bearing on Plaintiff's Second Cause of Action for Breach of Implied Contract. The Second Cause of Action is based on the contention that the statements and conduct of LASD gave rise to an implied agreement that LASD would purchase and pay for licenses for each copy of the RUMBA software installed on a workstation. Plaintiff contends that since LASD made extra copies beyond the set number of licenses agreed upon, LASD impliedly agreed to purchase additional licenses. Although Plaintiff maintains that it is entitled to summary judgment with respect to waiver, estoppel, and modification in relation to Plaintiff's Second Cause of Action, Plaintiff does not support its contention with designated evidence. As such, Plaintiff has not met its burden of demonstrating the absence of a genuine issue of fact for trial on these issues. Therefore, summary judgment is inappropriate.

10

Plaintiff also argues that a particular conversation between LASD employee, Lieutenant William Salveson ("Salveson"), and Plaintiff's account executive, Tim Claar ("Claar"), cannot reasonably be argued to prove that Plaintiff knew of the facts giving rise to estoppel. However, this Court disagrees. Indeed, LASD provides evidence to support its claim that Plaintiff's conduct led Defendant LASD to reasonably believe that it had the right to make copies of the RUMBA software based on Claar's alleged statements to Salveson that doing so would be "no problem." Such alleged statements by Claar to Salveson create an issue of material fact which cannot be resolved in favor of either party at this time.

With respect for the second factor, Plaintiff contends that LASD has not identified any conduct by Plaintiff to show that LASD was authorized to copy the RUMBA software on greater than 2,000 workstations. However, this Court disagrees. Indeed, as discussed above, there appears to be an issue of material fact created by the Claar-Salveson discussion regarding the copying of RUMBA software. Moreover, LASD offers the testimony of one of Claar's successors, Dorthy Truesdale, who testified that she heard directly from Lt. Salveson in late 1998 that LASD was imaging RUMBA into all new computers coming in, including on computers where it was not used to connect to a host. (Truesdale Dep., 98-99, 102-103, 123-126; LASD Exh. 19, pp. 79-83).[7] Under these circumstances, this Court cannot conclude as a matter of law that Plaintiff's conduct did not led Defendant LASD to reasonably believe that it has the right to copy Plaintiff's RUMBA software in the manner at issue.

With respect to the third element, Plaintiff claims that based on LASD's conduct and representations, that Defendants were clearly aware and obviously knew that Plaintiff would object to LASD's copying of the RUMBA software. However, as stated above, the facts are not so lucid. Indeed, the issue remains as to the substance of the conversation and the understanding, if at all, between Lt. Salveson and Claar in relation to making copies of the RUMBA software. As such, this Court cannot conclude, as a matter of law, that Defendant was unaware that Plaintiff objected to LASD's copying of the RUMBA software.

Finally, Plaintiff argues that the fourth element relating to LASD's alleged reliance on Plaintiff's conduct cannot be satisfied because "any purported reliance by LASD on *any* [of Plaintiff's] sales representatives (be it Clarr, Truesdale or otherwise) is precluded by the terms of ¶ 7 of both the click-through (EXH. 54) and volume licenses (EXH. 121)." (Plaintiff's Reply In

---

[7] Q: Did anybody at the Sheriff's Department ever tell you that the Sheriff's Department had installed RUMBA but not used it?
A: Yeah.
Q: Who said that?
A: Well, Lt. Salveson had said it.
Q: What did he say?
A: He said that they staged their deployment of software. All new computers come into the facility, they loaded all software on it, and shipped them out.
(Truesdale Depo., p. 102).

11

Support Of Its Motion for Summary Judgment at 13:25-28). However, such an argument presupposes that the click-though and volume licenses are enforceable, an issue that Plaintiff does not attempt to resolve. In addition, Defendant LASD offers facts indicating that it relied on the representations of Plaintiff's sales representatives to its detriment in deciding to baseline the RUMBA software onto all of LASD's computers.

This Court finds that Plaintiff has failed to prove that no reasonable juror could find that LASD could demonstrate any one of the four elements. Accordingly, this Court concludes that Plaintiff is not entitled to summary judgment as to Defendants Affirmative Defense of Equitable Estoppel.

> B. **Plaintiff Is Not Entitled To Summary Judgment In Relation To Defendants' Eleventh Defense Of Waiver And Estoppel By Acquiescence**

LASD's Eleventh Defense asserts that Plaintiff "knew of and acquiesced in the installation of workstation in excess of the number specified in the license . . . thereby waiving its claims and estopping plaintiff from raising them." Plaintiff primarily argues that this Eleventh Defense fails as a matter of law because of LASD's answer to Interrogatory No. 42. However, as discussed above, this Court does not find that LASD's answer to Interrogatory No. 42 clearly demonstrates that Plaintiff was ignorant that LASD had installed the RUMBA software in excess of what was originally agreed upon. Moreover, this Court does not find Plaintiff's other arguments regarding the inadmissibility of LASD's evidence due to irrelevance or hearsay compelling. As such, Plaintiff is not entitled to summary judgment in relation to Defendants' Eleventh Defense Of Waiver And Estoppel By Acquiescence.

## V.   CONCLUSION

Accordingly, this Court:

(1)   **DENIES** Defendant Los Angeles Sheriff's Department's Motion for Summary Judgment, Or In The Alternative, Summary Adjudication; and

(2)   **GRANTS IN PART AND DENIES IN PART** Plaintiff Wall Data's Motion for Summary Judgement, Or In The Alternative, Summary Adjudication.

**IT IS SO ORDERED.**

cc: all counsel

MINUTES
CIVIL - GEN                                                                Initials of Deputy Clerk slw

12